UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Dave Julsaint

v.

Civil No. 26-cv-761-LM-AJ
Opinion No. 2026 DNH 154 P

Strafford County Department of Corrections, Superintendent et al

**O R D E R**

Petitioner Dave Julsaint brought this petition under 28 U.S.C. § 2241, asserting that his civil immigration detention is unlawful because, inter alia, respondents had not provided him with a bond hearing before an Immigration Judge (IJ). Respondents conceded that Julsaint was entitled to a bond hearing as a matter of due process under the reasoning of Destino v. FCI Berlin, Warden, Civ. No. 25-cv-374-SE-AJ, 2025 WL 4010424 (D.N.H. Dec. 24, 2025). This court therefore ordered respondents to provide Julsaint with a constitutionally adequate bond hearing. A bond hearing was held but the IJ denied release, finding by a preponderance of the evidence that Julsaint is a flight risk that no amount of bond or conditions of release can ameliorate.

Following the IJ's bond order, Julsaint submitted a pleading (doc. no. 10) asserting that the IJ's flight risk finding violated his due process rights because the evidence was insufficient as a matter of law to establish flight risk. The government objects. Doc. no. 11. For the following reasons, the court agrees with Julsaint and orders him released.

**BACKGROUND**[1]

Julsaint is a thirty-year-old Haitian citizen. He lawfully entered the United States in 2023 through the Haitian Humanitarian Parole program after receiving numerous death threats and beatings from a gang connected to the Haitian government. His cousin, a United States citizen, sponsored his application. After entering the United States, Julsaint began living in Massachusetts with his cousin. He applied for Temporary Protected Status (TPS) in 2024. Julsaint also found work at Harvard Medical School, took English classes at Roxbury Community College, and became an active member of a local church.

On June 10, 2024, Julsaint was arrested by the Boston Police Department. According to a police report authored in connection with this arrest, officers responded to an address in Mattapan on that date for a report of an assault. Upon arrival, witnesses directed officers to Julsaint, who was standing with the alleged victim (another of Julsaint's cousins). The alleged victim told officers that Julsaint broke her phone. She did not claim that Julsaint assaulted her. Officers observed no injuries and the alleged victim declined medical treatment. The alleged victim was upset and said she wanted her phone back.

The owner of the store where the alleged assault occurred told officers that he witnessed the assault and had surveillance footage of it. The store owner provided surveillance footage to the officers. Julsaint admitted to the officers that he broke

---

[1] The following facts are drawn from materials available to the IJ at the time of the bond hearing. They are recited in the light most favorable to the IJ's decision. Acero v. FCI Berlin, Acting Warden, 825 F. Supp. 3d 52, 55 n.1 (D.N.H. 2026).

the alleged victim's phone. He stated that he had a business dispute with the store owner and that he became upset when he saw the alleged victim shopping there.

Based on the foregoing, Julsaint was charged with one count of simple assault and one count of destruction of property. A state court judge released Julsaint on personal recognizance bail, and Julsaint thereafter attended all court hearings as required. After several preliminary hearings, a combined suppression hearing and bench trial were scheduled for February 7, 2025. When the prosecutor was not prepared to go forward on that date, the court dismissed the charges without prejudice for lack of prosecution.

Julsaint's grant of parole pursuant to the Haitian Humanitarian Parole program expired on April 30, 2025. On December 26, 2025, immigration officers arrested Julsaint pursuant to an "enforcement action." Doc. no. 1-2 at 4. Several officers set up a "surveillance perimeter" outside a particular address in Mattapan to locate Julsaint. Id. At approximately 3:00 p.m., they saw a man matching Julsaint's appearance in photographs walking on the sidewalk in front of the "target address." Id. The man got in a car and started driving away. The officers stopped the car shortly thereafter and confirmed that Julsaint was the driver. Julsaint was cooperative and compliant throughout the arrest.

Julsaint has been detained since his December 2025 arrest. He applied for asylum while incarcerated. In April 2026, an IJ summarily denied his application and ordered Julsaint removed. Julsaint appealed the IJ's decision to the Board of Immigration Appeals. His appeal remains pending.

The instant habeas action commenced on September 18, 2026. Julsaint challenged the legality of his detention in a variety of ways, including on the basis that respondents' failure to provide him with an opportunity to challenge his detention following his arrest violated his due process rights. The primary relief Julsaint sought in his petition was outright release. After this court directed respondents to show cause why the petition should not be granted, respondents conceded that, under Destino's reasoning, Julsaint is entitled to a bond hearing as a matter of due process. The government denied that Julsaint was entitled to any other form of relief. In light of the government's position and Destino's persuasive weight, the court granted the petition to the extent that it ordered respondents to provide Julsaint with a "constitutionally adequate" bond hearing before an IJ. Endorsed Order of Sept. 23, 2026.

A bond hearing was held before an IJ on September 28, 2026. Prior to the hearing, Julsaint submitted the aforementioned evidence of his lawful entry to the United States, community and family ties, employment and educational history, and a docket sheet reflecting that he had attended all hearings as required in his criminal case and that those charges had been dismissed. He also submitted numerous letters of support from friends and family members attesting to his good character, as well as research on the efficacy of ICE's "Alternatives to Detention" (ATD) program in ensuring that noncitizens attend removal proceedings as required. The only additional evidence respondents provided was the police report

underlying Julsaint's June 2024 arrest.[2] After hearing argument from the parties, the IJ took bond under advisement.

The next day, the IJ issued a written order denying bond. The IJ first found that respondents failed to establish by clear and convincing evidence that Julsaint's release would pose a danger. However, the IJ did find that respondents proved by a preponderance of the evidence that Julsaint's release posed a risk of flight that no amount of bond or conditions of release could sufficiently ameliorate. The IJ stated that, although Julsaint's charges were dismissed, "the existence of the arrests[3] are significant" because Julsaint "chose to act in a way that resulted in an arrest, showing a disregard for the laws of the United States." Doc. no. 8-1 at 5. The IJ also based his finding on Julsaint's pending application for asylum, finding it "speculative" that Julsaint could obtain reversal on appeal to the BIA. Id. The IJ reasoned that Julsaint's "limited avenues for relief" from removal diminished his incentive to appear at future hearings. Id. Although the IJ acknowledged Julsaint's stable residence, community ties, bond sponsor, and the fact that he lawfully entered the United States, the IJ nevertheless found based on Julsaint's "diminished avenues for relief and alleged criminal conduct . . . that no amount of bond or alternatives to detention would mitigate [Julsaint's] flight risk." Id.

[2] The surveillance footage mentioned in the police report was not submitted to the IJ.

[3] It is undisputed that the June 2024 arrest was Julsaint's only criminal arrest.

**DISCUSSION**

As discussed, this court previously granted Julsaint's habeas petition to the extent that the court ordered respondents to provide Julsaint with a bond hearing that complied with his due process rights. Julsaint argues that the IJ's flight risk finding violated this court's order granting his habeas petition, as well as his due process rights, because the evidence submitted to the IJ was insufficient as a matter of law to conclude by a preponderance of the evidence that he poses a risk of flight that no amount of bond or conditions of release could ameliorate. The court agrees.[4]

In Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021), the First Circuit held that, in order to detain a noncitizen during the pendency of removal proceedings pursuant to 8 U.S.C. § 1226(a), due process requires the government to prove that the noncitizen is (1) dangerous by clear and convincing evidence or (2) a flight risk by a preponderance of the evidence. Although Hernandez-Lara technically concerned bond hearings afforded under § 1226(a) and its implementing regulations, this court discerns no reason that a different standard would apply to bond hearings required as a matter of due process, and the parties agree that this burden of proof applies. See Timbigamba v. FCI Berlin, Warden, 836 F. Supp. 3d 430, 442 (D.N.H. 2026).

[4] Respondents contend that this court's consideration of Julsaint's argument is precluded by 8 U.S.C. § 1226(e). The court rejects this contention for the same reasons it has previously rejected it in other cases. See Timbigamba v. FCI Berlin, Warden, 836 F. Supp. 3d 430, 442 n.7 (D.N.H. 2026); Mayancela Mayancela v. FCI Berlin, Warden, Civ. No. 25-cv-348-LM-TSM, 2025 WL 3215638, at *4-5 (D.N.H. Nov. 18, 2025).

Where, as here, a court sitting in habeas orders a bond hearing to remedy otherwise unconstitutional detention, the court retains authority to ensure that the provided bond hearing complied with the petitioner's constitutional rights. E.g., Massingue v. Streeter, No. 3:19-cv-30159-KAR, 2020 WL 1866255, at *3-4 (D. Mass. Apr. 14, 2020). One way Julsaint can show that the bond hearing violated due process is by establishing that the evidence before the IJ was such that no reasonable IJ could have concluded that the government met its burden of demonstrating dangerousness or flight risk to the requisite degree of certainty. Timbigamba, 836 F. Supp. 3d at 442. Here, Julsaint contends that the government's flight-risk evidence was insufficient as a matter of law.

To meet its burden, the government was required to prove that it is more likely than not both (1) that Julsaint's release would pose a risk of flight and (2) that there is no amount of bond or conditions of release that could sufficiently ameliorate that risk. Hernandez-Lara, 10 F.4th at 41; Tsikhotskyi v. Tatum, Civ. No. 26-cv-249-JL-TSM, 2026 WL 1266023, at *3 (D.N.H. May 8, 2026). Carrying this burden of proof requires the presentation of reliable, probative, and specific evidence. United States v. Stimpson, 113 F.4th 350, 355 (3d Cir. 2024); In re Guerra, 24 I. & N. Dec. 37, 40-41 (BIA 2006), abrogated in part on other grounds by Hernandez-Lara, 10 F.4th at 41. In the civil immigration context, the government's burden of demonstrating flight risk is no less weighty than its burden of demonstrating that a criminal defendant should be detained pretrial on the basis of flight risk. Hernandez-Lara, 10 F.4th at 40.

In this case, there was significant evidence before the IJ that Julsaint's release posed no flight risk. He entered the country lawfully after obtaining parole pursuant to the Haitian Humanitarian Parole program. After lawfully entering the country, he resided with his cousin (a U.S. citizen) in Massachusetts, where he worked, attended school, and became involved in church. He applied for additional immigration benefits in the form of TPS. And, while he was charged with two minor offenses in Massachusetts state court, the police report underlying those charges showed that Julsaint cooperated with the officers' questioning and was compliant during the arrest process. The Massachusetts judge released Julsaint on personal recognizance, and he thereafter attended all hearings as required until the charges were dismissed. Even when Julsaint was unexpectedly arrested by ICE in December 2025, he was cooperative, compliant, and made no effort to flee or resist arrest.

The IJ nevertheless found that Julsaint's release posed an unacceptable risk of flight for two reasons: (1) the alleged conduct underlying his dismissed criminal charges; and (2) the unlikely prospect of him obtaining relief from removal. However, neither justification was sufficient for a reasonable IJ to find flight risk, either alone or in combination.

With respect to Julsaint's alleged conduct, the IJ found it significant that Julsaint "chose to act in a way that resulted in an arrest, showing a disregard for the laws of the United States." Doc. no. 8-1 at 5. In support of this conclusion, the IJ cited only to the BIA's opinion in In re Andrade, 19 I. & N. Dec. 488, 490-91 (BIA

1987). The noncitizen in Andrade had a lengthy record of criminal convictions, including a conviction for attempted robbery, two burglary convictions, and receipt of stolen goods. Andrade, 19 I. & N. Dec. at 490. He received a sixteen-month sentence on the stolen goods charge and was paroled in February of 1987. Id. Less than two months later (and while still on parole), he was convicted of another receiving-stolen-property offense. Id. It was in this context that the BIA held that a noncitizen's criminal record can serve as "a relevant consideration in determining the necessity for or the appropriate amount of bond insofar as it relates to a [noncitizen's] character." Id. Thus, an "extensive and recent criminal record" is generally a "serious matter militating against . . . release without a significant bond." Id.

Julsaint's case differs sharply. He has been convicted of no offense, let alone multiple felonies. Moreover, Julsaint admitted to the arresting officers that he broke his cousin's phone. His cousin did not report that he assaulted her; she had no injuries and declined medical assistance; the only person who reported witnessing the assault had a motive to lie (his dispute with Julsaint); and the surveillance footage that purported to show the assault was never admitted into evidence—either in the Massachusetts proceeding or at the bond hearing. The court is mindful of the deference afforded under sufficiency-of-the-evidence review. But the preponderance-of-the-evidence standard has teeth. Stimpson, 113 F.4th at 355. In light of the foregoing, no reasonable jurist could have found by a preponderance of the evidence that Julsaint's alleged conduct evinced "consistent disrespect for the

laws of the United States" such that he posed a risk of flight so substantial that no amount of bond or conditions of release could satisfactorily assure his appearance at future proceedings.[5] Andrade, 19 I. & N. Dec. at 490; see doc. no. 8-1 at 5.

The IJ also based his flight risk finding on what he deemed Julsaint's "speculative" prospect of obtaining relief from removal from the BIA. Doc. no. 8-1 at 5. While BIA precedent permits IJs to consider the likelihood of obtaining relief from removal in assessing a noncitizen's risk of absconding from future proceedings, an IJ considering a petitioner's likelihood of obtaining relief cannot base his conclusion on legally erroneous grounds. Timbigamba, 836 F. Supp. 3d at 447. Here, the IJ failed to adequately articulate the basis for his conclusion,[6] nor is his reasoning clear from the record. While an IJ "need not discuss ad nauseam every piece of evidence," the IJ must "give[ ] reasoned consideration to the evidence as a whole, ma[k]e supportable findings, and adequately explain[ ] its reasoning." Barnica-Lopez v. Garland, 59 F.4th 520, 530 (1st Cir. 2023) (quoting Pan v. Gonzales, 489 F.3d 80, 87 (1st Cir. 2007)). Where an IJ cites "little or no reasoning," courts are reticent to defer to "an IJ's flight-risk determination unsupported by any

---

[5] It is also significant that, despite the noncitizen's serious criminal record in Andrade, the BIA did not deny bond outright and instead set bond at $10,000. Andrade, 19 I. & N. Dec. at 491.

[6] The IJ did state that Julsaint has no "familial ties that could confer immigration benefits on to him." Doc. no. 8-1 at 5.

attempt at reasoned justification."[7] Timbigamba, 836 F. Supp. 3d at 447-48 (quoting Singh v. Valdez, No. 1:26-cv-1109-WJM, slip op. at *10-11 (D. Colo. Apr. 1, 2026) (doc. no. 11)). Absent explanation, the court cannot discern whether the IJ's conclusion is based on legally erroneous grounds.

For all of these reasons, the court concludes that the evidence before the IJ was insufficient as a matter of law to conclude by a preponderance of the evidence that Julsaint's release poses a risk of flight so substantial that it cannot be ameliorated by any amount of bond or conditions of release. Because the IJ denied bond despite this failure of proof, the bond hearing provided to Julsaint was not "constitutionally adequate." Endorsed Order of Sept. 23, 2026.

Having found that the bond hearing violated both Julsaint's constitutional rights and this court's order granting his habeas petition, the question becomes one of remedy. Julsaint, who has now been incarcerated for approximately ten months, seeks immediate release. This court has previously ordered such relief in materially identical circumstances. See Timbigamba, 836 F. Supp. 3d at 448-49. As the government has offered no persuasive justification to depart from Timbigamba's reasoning on this score, the court concludes that an order directing Julsaint's immediate release under reasonable conditions of supervision is the appropriate

---

[7] The filing deadline for DHS to contest Julsaint's appeal of the pretermission of his asylum application was September 30, which was one day after the IJ issued his bond decision. According to Julsaint, DHS failed to object to his appeal. Respondents do not contest that assertion here.

measure to enforce its order granting the habeas petition as well as Julsaint's constitutional rights.[8]

**CONCLUSION**

The petition (doc. no. 1) is granted to the extent that respondents are ORDERED to release Julsaint under reasonable conditions of supervision within twenty-four hours. Respondents shall file a status report confirming their compliance with this order within twenty-four hours of Julsaint's release.

SO ORDERED.

Landya McCafferty
United States District Judge

October 22, 2026

cc: Counsel of Record

[8] In light of this conclusion, the court need not address Julsaint's alternative arguments for release.